### Andrew Placek, Appellee, v. Marquette Third Vein Coal Mining Company, Appellant.

### Gen. No. 5523.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

2. VERDICTS—*when excessive.* Held, in an action on the case for personal injuries, that a verdict for $2,000 was excessive where it appeared that the injuries were slight except as to the plaintiff's wrist in which no bones were broken.

3. INSTRUCTIONS—*how to be construed.* Instructions are to be construed as a series, and the omission of one may be supplied by the contents of another.

Action in case for personal injuries. Appeal from the Circuit Court of Bureau county; the Hon. R. M. SKINNER, Judge, presiding. Heard in this court at the October term, 1911. Affirmed on remittitur. Opinion filed March 13, 1912.

CAIRO A. TRIMBLE, for appellant.

336     APPELLATE COURTS OF ILLINOIS.

Placek v. Marquette Third Vein Coal Mining Co., 168 Ill. App. 335.

R. L. RUSSELL and JOHNSON & BELASCO, for appellee;
JOEL BAKER, of counsel.

MR. JUSTICE WILLIS delivered the opinion of the
court.

This is an action brought by Andrew Placek against
Marquette Third Vein Coal Mining Company to re-
cover for damages for injuries received by him on
July 13, 1909, in the mine of the company at Marquette,
in Bureau county. The declaration, as amended, con-
tained six counts, each of which alleged that the de-
fendant owned and operated the mine in question, that
the accident occurred on July 13, 1909, and that plaint-
iff was in the exercise of due care at the time of the ac-
cident. The first count further alleged that defendant
so negligently drove its certain cars in said mine as
to collide and jump the track and injure the plaint-
iff. The second count alleged that defendant negli-
gently permitted certain cars on a side track in said
mine to project over onto the main track so that cars
on said main track collided with such projecting cars,
whereby certain cars jumped the track and injured
plaintiff. The third count alleged that defendant neg-
ligently drove a train attached to a motor on the main
track in said mine, while a car was projecting from a
switch onto the main track thereby causing a collision
and injury to plaintiff complained of. The fourth,
fifth and sixth counts were practically the same as the
first, second and third, respectively, except that it was
alleged in the three latter counts that plaintiff was in
the mine by invitation of defendant, while in the first
three it was alleged that he was there as an employee.
Defendant below filed a plea of not guilty and, upon a
jury trial, there was a verdict in favor of plaintiff
for $2,000. Motions for a new trial and in arrest of
judgment were overruled and judgment was entered
upon the verdict, from which the defendant below ap-
peals.

Andrew Placek had been a coal miner for about nine

years and had worked for appellant in the Marquette mine a number of years before the accident, although not employed by appellant just prior to that occurrence. On the morning of July 13, 1909, appellee who was a certified miner, with his son, who had no certificate, and several other men, went down the shaft of the Marquette mine to the bottom and then went north in one of the entries of the mine about half a mile to a point near the entrance of the tenth west entry. A railroad track had been laid through the bottom of this mine and at the tenth west entry, where these men stopped, there was a side track capable of holding about 22 cars. At this point the men placed themselves against the wall east of the side track, where there was a sufficient clearance so that they were in no danger of being struck by cars passing along the side track. At this date one O'Bierne was mine manager and one Flood was his assistant for the north part of the mine. A trolley wire had been strung in this part of the mine and a motor car was used for hauling in empty cars and for hauling out loaded ones. About the time the men referred to above, including appellee and his son, had located themselves alongside the wall of this entry, Flood ran a number of empty cars in on this switch with the motor, where he left them. He then passed out on to the main track, hitched onto some loaded cars standing there and hauled them out to the bottom of the shaft. Flood repeated this operation with another string of loaded cars and then turned the motor over to a substitute motorman, the regular motorman not being at work that day. Toner, the substitute motorman, then proceeded to haul another string of loaded cars out to the bottom of the shaft but in doing so, as the string of loaded cars was passing by the end of the switch track, it struck the empty car nearest the main track and threw it off the track and upon appellee, who was crushed between it and the wall and was injured thereby.

On numerous questions of fact the evidence is conflicting and the jury would have been justified in finding for either party. Appellee claims that he called upon Flood the assistant mine manager, the night before the accident and asked for work and that Flood told him to come to the mine the next morning with his tools and he would be put to work. There is proof on the other hand that Flood did not hire appellee or offer to start him at work, but that Flood told him to see O'Bierne, whom the men called "the big boss". Flood testified that O'Bierne alone had authority to hire men. There is other evidence to the effect that when appellee reached the bottom of the shaft, he inquired for "the big boss" and, upon being told that he had gone north in the entry, started off in that direction, which, if true, would indicate that appellee was hunting for O'Bierne and was waiting at this particular place to ask him for a job. There is other proof to the effect that Flood did, in fact, hire men and put them to work without sending such applicants to "the big boss" at all. There is proof that whenever a string of cars was being hauled into or out of this entry, an employe of the company, called a "trip rider" rode on the end of the train farthest from the motor; that on the first trip made by Flood with the motor and a string of cars past the place where appellee and other men were standing or sitting alongside the wall, the trip rider told these men they were in a dangerous place and that they should go into the tenth west entry, where they would be safe; and that thereupon all of these men, except appellee and his son, went into the tenth west entry as directed. There is other proof that this was not addressed to anybody in particular and that it was not heard by appellee or his son. There is proof that a dozen of the loaded cars had passed the south end of this switch before the empty car was struck and thrown over upon appellee, which would tend to show that it was an unac-

countable accident, for which appellant would not be liable. There is other proof that it was the first loaded car which struck the empty car and caused appellee's injuries and this, if true, would prove that when the empty cars had been placed on the switch, they had been allowed to stand too near the main track to permit a loaded car to go by them. If this situation really existed, it should have been seen by the switchman employed by the company, before he threw the mechanism which closed the switch and before he signaled the motorman to pull out this string of loaded cars, and his failure to notice such a condition of things would be negligence for which appellant would be liable.

Upon these and numerous other disputed questions of fact the verdict of the jury, approved by the trial judge, finds such a support in the evidence that we do not feel at liberty to set it aside. In our judgment, the jury were warranted in finding that appellee was a servant of appellant and was waiting at the place where he was hurt by direction of the assistant mine manager until such assistant was ready to set him to work and that said assistant left the motor at that point after his third trip for the purpose of finding work for the men waiting there, but, if there was not sufficient proof to establish that appellee was a servant of appellant, still he certainly was in the mine with the knowledge and by the direction of those in authority there and was not a trespasser. Appellant claims that appellee was not in the exercise of due care for his own safety at the time he was injured and that his injuries were caused by his own contributory negligence, but that position is not sustained by the evidence. The proof clearly shows that appellee would not have been struck by this car or injured in any way, if the loaded car on the main track had not collided with the empty car and forced it from the track, as there was an ample clearance be-

tween appellee and the cars on the switch track. Appellee cannot be blamed for the collision and, if the trip rider was fully satisfied that appellee was in a dangerous position, he should not have allowed the cars to be moved until appellee had been removed from such position.

Appellant complains of the action of the court upon the instructions in refusing some and modifying others requested by it and in giving instructions for appellee. We deem it unnecessary to set out the instructions and discuss each point made. We think it sufficient to say that, upon an examination of the entire charge, we find that every proposition to which appellant was entitled was given to the jury.

In one respect the judgment does not meet with our approval. We consider that the damages awarded are excessive, in view of the nature and extent of appellee's injuries. Except as to his wrist, his injuries were slight and detained him from his work a comparatively short time. He was in the hospital but a very few days and was confined to his house thereafter a very short time. His wrist was injured but no bones were broken. There seems to have been some injury to the tendons of the wrist and appellee claims that he cannot use that wrist, the left one, as well as before the accident and that, as it is necessary to use both hands equally in mining coal, the amount of work he can do now has been much lessened and his means of livelihood much impaired. He claims that since returning to work after the accident, he has been able to earn only about half as much as before the injury, but the books of the company for which he was working before the accident and those of the company which has employed him since that time, introduced in evidence, show that he is now earning practically as much as he did before he was injured. In our judgment the injury to the wrist is altogether too light to justify so large a verdict.

This opinion will, therefore, be lodged with the clerk of this court and counsel notified thereof. If counsel for appellee shall file a *remittitur* of $1,000 within seven days thereafter, the judgment will be affirmed in the sum of $1,000 at the costs of appellee; otherwise, the judgment will be reversed and the cause remanded.

*Affirmed on remittitur.*

᛫ Appellee having afterwards filed a *remittitur* herein in the sum of $1,000 the judgment will be affirmed in the sum of $1,000 at the costs of appellee.